# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

JENNIFER LEGG,

       Plaintiff,

v.

ST. VINCENT HOME CARE LLC D/B/A COMPASSUS,

       Defendant.

Case No.

Hon.

---

Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (P85633)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
340 Beakes St., Suite 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com
grant@hurwitzlaw.com

## COMPLAINT AND JURY DEMAND

NOW COMES Jennifer Legg ("Plaintiff"), by and through the undersigned attorneys, HURWITZ LAW, PLLC, and states the following:

## INTRODUCTION

1. St. Vincent Home Care LLC d/b/a Compassus ("Defendant") deliberately flouted the Title VII of the Civil Rights Act of 1964 as amended (Title VII) by blanketly denying religious exemptions from its mandatory COVID-19 policy, telling Plaintiff that "exemptions are not allowed." In December 2021,

Defendant's parent company acknowledged the illegality of its actions and began to recall its wrongfully disciplined employees back to work due to "legal challenges" and "staffing challenges." Plaintiff, however, was never contacted by management and simply terminated after her 24 years of service.

## PARTIES, JURISDICTION, AND VENUE

2. Plaintiff Jennifer Legg resides in the Village of Clarkston, County of Oakland County, State of Michigan.

3. Defendant St. Vincent Home Care LLC d/b/a Compassus is a domestic nonprofit corporation in Genesee County, Michigan.

4. The Eastern District of Michigan has jurisdiction over the Title VII of the Civil Rights Act of 1964 ("Title VII") claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the Elliott-Larsen Civil Rights Act ("ELCRA") claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b)(1) because it is the judicial district in which Defendant operates its businesses.

6. Plaintiff received a Right to Sue letter from EEOC on December 27, 2022.

## FACTUAL ALLEGATIONS

### Plaintiff's Religious Accommodation Request

7. Plaintiff was a physical therapist for Defendant for 24 years.

8. On October 8, 2021, Plaintiff emailed Kelley Bula to inquire if she could submit a religious exemption. She also communicated that she was confused about the mandate announcement.

9. Ms. Bula replied, stating "No as we are in an Ascension building and are Ascension partners so exemptions are not allowed," the directed her to speak to "Dr. Merkel" about her questions.

10. Plaintiff emailed Ms. Bula again, stating "Just so I am clear, I need to get the Covid vaccine by NOV 12, or I cannot work for the agency?? Are they not allowing any exemptions?"

11. Ms. Bula replied "Yes, that is correct," affirming Plaintiff's concern.

12. Plaintiff was effectively suspended on November 12, 2021.

13. Plaintiff was not contacted during her suspension and was effectively terminated.

14. Two months after Plaintiff's employment ended, Defendant called her to conduct an exit interview. It failed to give her a termination letter or official termination date.

3

15. Plaintiff worked safely and successfully for Defendant prior its vaccine mandate.

16. There are a host of reasonable accommodations that Defendants failed to consider.

17. Plaintiff could have tested daily to confirm whether she was ill.

18. Plaintiff could have engaged in frequent sanitizing and disinfecting.

19. Plaintiff could have worn gloves and respirators in the workplace.

20. Plaintiff could have transferred to a more solitary position.

21. Defendant made employees work in-person throughout the pandemic.

22. Before any vaccine was developed, the following safety measures were deemed sufficiently effective to protect employees, patients, and their loved ones: daily testing, enhanced sanitation measures, including handwashing and disinfecting, gloves and respirators, and social distancing whenever practicable.

23. Examples of reasonable accommodations include wearing a mask, working "at a social distance" from others, working a modified shift, getting tested, and being given the opportunity to telework. U.S. EQUAL EMPL. OPPORTUNITY COMM'N, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* (May 28, 2021).

24. "If the employer denies the employee's proposed accommodation, the employer should explain to the employee why the preferred accommodation is not being granted." *Id*.

25. Defendant did not explain to Plaintiff why her request for accommodation could not be granted.

26. Defendant evaded any sort of "bilateral cooperation," *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986), when it suspended Plaintiff without pay.

27. "Bilateral cooperation is appropriate in the search for an acceptable reconciliation of the needs of the employee's religion and the exigencies of the employer's business." *Id.*

28. Defendant's accommodation process was arbitrary and inconsistent.

29. Defendant granted some accommodation requests based on pure favoritism.

30. Defendant unnecessarily shared the private health information of Plaintiff with coworkers.

31. Defendant did not explore available reasonable accommodations from the vaccine.

32. Defendant's parent company gradually recalled some suspended employees back to work approximately five (5) weeks later due to "legal challenges" and "staffing challenges."

**Defendant Did Not Base Its Decision on Undue Hardship,
Nor Could it Establish Undue Hardship**

33. An employer does not satisfy its burden of proving undue hardship "merely by showing that an accommodation would be bothersome to administer or disruptive of the operating routine." *Draper v. United States Pipe & Foundry Co.*, 527 F.2d 515, 520 (6th Cir. 1975). The operative word is "undue," meaning that "something greater" than a mere hardship is required. *Id.*

34. Defendant cannot satisfy its burden of proving undue hardship.

35. Defendant cannot allege undue hardship when some of its employees, including pregnant employees, were granted accommodations to the vaccine mandate.

36. Defendant cannot allege undue hardship when it began recalling unvaccinated employees approximately five (5) weeks after initially suspending them, meaning that any undue hardship must have seemingly disappeared for no apparent reason in the interim.

37. Plaintiff was not requesting a license to roam about uninhibited without sanitizing or wearing any personal protective equipment ("PPE"), as though no health threat existed.

38. Plaintiff was more than willing to comply with all safety protocols.

39. Plaintiff had been engaging in these alternative practices, which had been deemed effective throughout the pandemic, for approximately eighteen (18) months prior to issuance of Defendant's vaccine mandate.

## COUNT I
### Violation of Title VII, 42 U.S.C. § 2000e, *et seq*.
### Religious discrimination – Failure to accommodate and Disparate Treatment

40. Plaintiff restates the foregoing paragraphs as set forth fully herein.

41. At all times relevant hereto, Plaintiff was an employee and Defendant was her employer for the purposes of 42 U.S.C. § 2000e, *et seq*.

42. Title VII of the Civil Rights act of 1964, 42 U.S.C. § 2000e *et seq*., makes it unlawful for an employer to fail or refuse to reasonably accommodate the religious beliefs and practices of an employee or prospective employee.

43. Title VII prohibits an employer from discriminating against an employee "because of such individual's... religion." 42 U.S.C. § 2000e-2(a)(1).

44. This "includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that [it] is unable to reasonably accommodate an employee's... religious observance or practice without undue hardship on the conduct of the employer's business." *Id*. § 2000e(j).

45. After receiving an accommodation request, "the employer is obligated by law to engage in interactive process – a meaningful dialogue with the employee[.]" *Chevron Phillips Chem. Co.*, 570 F.3d at 621 (5th Cir. 2009).

46. The employer must act in "good faith," *Id.*, and the employee must "make a good faith attempt to satisfy his needs through means offered by the employer," *Brener v. Diagnostic Ctr. Hosp.*, 671 F.2d 141, 146 (5th Cir. 1982)

47. Title VII makes it unlawful for an employer to retaliate against an employee who engaged in protected activity.

48. Plaintiff holds sincere *bona fide* religious beliefs that preclude her from receiving a COVID-19 vaccine.

49. Plaintiff informed Defendant of those beliefs and requested religious accommodation from the vaccine mandate.

50. Defendant refused to engage in the interactive process with Plaintiff regarding her religious accommodation requests.

51. Under Title VII, Plaintiff can establish a *prima facie* case of religious discrimination based on a failure to accommodate by showing: (1) she has a *bona fide* religious belief that conflicts with an employment requirement; (2) about which she informed the [Defendant]; and (3) she suffered an adverse employment action for failing to comply with the conflicting employment requirement. *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986).

52. Multiple accommodations could have been offered to Plaintiff. They include mask wearing and periodic testing for COVID-19—the very same accommodations being offered to virtually every public and private employee in the

State of Michigan.

53. A "[r]easonable accommodation is by its terms most logically construed as that which presently, or in the immediate future, enables the employee to perform the essential functions of the job in question." *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995).

54. Defendant would not suffer undue hardship by granting Plaintiff an accommodation. 42 U.S.C. § 2000e(j).

55. The issue became moot when Defendant failed to engage each employee in "a meaningful dialogue" about the accommodation request and learn whether an acceptable accommodation would impose undue hardship. *Chevron Phillips Chem. Co.*, 570 F.3d at 621 (5th Cir. 2009).

56. Instead, Defendant announced a one-size-fits all approach to accommodation that deprived Plaintiff of the conversation necessary to discover what accommodations were possible. *Bultemeyer v. Fort Wayne Cmty. Schs.*, 100 F.3d 1281, 1285 (7th Cir. 1996) ("courts should look for signs of failure to participate in good faith or failure by one of the parties to help the other party determine what specific accommodations are necessary" and "[a] party that fails to communicate... may also be acting in bad faith").

57. Irrespective of the interactive process, Defendant failed to provide Plaintiff with reasonable accommodations for her religious beliefs.

9

58. As a result, Plaintiff was not informed (a) what about her accommodation request posed an undue hardship; and (b) why she could not be accommodated.

59. Defendant thereby discriminated against Plaintiff because of her religious beliefs.

60. Defendant's failure to provide religious accommodations has harmed and will continue to harm Plaintiff.

61. As a direct and proximate result of Defendant's violation of Title VII Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future.

62. As a further direct and proximate result of Defendant's violation of Title VII, Plaintiff has been denied employment and placed in financial distress and have suffered a loss of earnings and benefits, and a loss of and impairment of their earning capacity and ability to work and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

63. By failing to engage in the interactive process or offer any reasonable accommodation, Defendant's discriminatory actions were intentional and/or reckless and in violation of Title VII.

64. Plaintiff also suffered disparate treatment discrimination.

65. "To assert a successful claim of religious discrimination . . . a plaintiff must either present direct evidence of discrimination, or, in the absence of direct evidence, present a prima facie case of indirect discrimination by showing (1) they were a member of a protected class, (2) they experienced an adverse employment action (3) they were qualified for the position, and (4) they were replaced by a person outside of the protected class or were treated differently than similarly situated employees." *Tepper v. Potter*, 505 F.3d 508, 515 (6th Cir. 2007).

66. Plaintiff espoused religious beliefs and is therefore a member of a protected class.

67. Defendant directly discriminated against Plaintiff by terminating them after they stated their sincerely held religious beliefs that conflicted with Defendant's subjected standard of religiosity.

68. Defendant allowed other unvaccinated employees without Plaintiff's same religious beliefs to be exempted from Defendant's vaccine mandate policy.

69. Defendant placed Plaintiff on unpaid suspension before ultimately terminating employment.

70. It is undisputed that Plaintiff was qualified for the position.

71. Plaintiff was treated differently than similarly situated employees with different religious beliefs who were allowed to continue working despite not being

11

vaccinated.

72. Plaintiff was terminated and replaced with a person of different religious beliefs.

73. Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith because of the denial of their requests and will so suffer in the future.

### COUNT II
### VIOLATION OF ELLIOTT-LARSEN CIVIL RIGHTS ACT ("ELCRA")
### Religious Discrimination—Disparate Treatment

74. Plaintiff holds sincere religious beliefs that conflict with Defendant's COVID-19 vaccine mandate.

75. Plaintiff informed Defendant how these sincerely held religious beliefs conflicted with Defendant's COVID-19 vaccine mandate.

76. "To assert a successful claim of religious discrimination . . . a plaintiff must either present direct evidence of discrimination, or, in the absence of direct evidence, present a *prima facie* case of indirect discrimination by showing that the employee (1) was a member of a protected class; (2) experienced an adverse employment action; (3) was qualified for the position; and (4) was replaced by a person outside of the protected class or that the employee was treated differently

than similarly situated employees." *Tepper v. Potter*, 505 F.3d 508, 515 (6th Cir. 2007).

77. Defendant directly discriminated against Plaintiff based on termination after the employee espoused sincerely held religious beliefs that conflicted with Defendant's policy.

78. Defendant allowed other unvaccinated employees without Plaintiff's same religious beliefs to be exempted from Defendant's vaccine mandate policy.

79. Plaintiff's sincerely held religious beliefs qualify the employee as a member of a protected class.

80. Defendant placed Plaintiff on unpaid suspension before ultimately terminating Plaintiff.

81. Plaintiff was qualified for the position.

82. Plaintiff was treated differently than similarly situated employees with different religious beliefs who were allowed to continue working despite being unvaccinated.

83. Plaintiff was terminated and replaced with a person of different religious beliefs.

84. Defendant also terminated Plaintiff based on Defendant's own subjective standard of religiosity, thus directly discriminating against Plaintiff's unique sincerely held spiritual beliefs.

85. EEOC Guidance states that ("[t]he definition of 'religion' under Title VII protects both traditional and nontraditional religious beliefs . . . including those that may be unfamiliar to employers.")

86. The law on religious discrimination states that religious beliefs need not be "acceptable, logical, consistent or comprehensible to others" and the law "leaves little room for a party to challenge the religious nature of an employee's professed beliefs."). *E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 279 F.3d 49, 56 (1st Cir. 2002).

87. Defendant defied the law when it determined that some religious beliefs of its employees were valid and while others were bogus.

88. In discovery, Plaintiff will be able to investigate which types of religious beliefs Defendant found were acceptable and which types of religious beliefs Defendant discriminated against, thereby establishing evidence probative of discriminatory intent.

89. Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith because of the termination and will so suffer in the future.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the following relief:

14

    a.    Compensatory damages for monetary and non-monetary loss;

    b.    Exemplary and punitive damages;

    c.    Prejudgment interest;

    d.    Reasonable attorney's fees; and

    e.    Such other relief as in law or equity may pertain.

Respectfully Submitted,
HURWITZ LAW PLLC

*/s/ Noah S. Hurwitz*
Noah Hurwitz (P74063)
*Attorney for Plaintiff*
340 Beakes St., Suite 125
Ann Arbor, MI 48103
(844) 487-9489
noah@hurwitzlaw.com

Dated: March 24, 2023

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

JENNIFER LEGG,

       Plaintiff,                   Case No.

v.

                                 Hon.

ST. VINCENT HOME CARE LLC D/B/A COMPASSUS,

       Defendant.

---

Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (P85633)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
340 Beakes St., Suite 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com
grant@hurwitzlaw.com

---

## **DEMAND FOR TRIAL BY JURY**

Jennifer Legg ("Plaintiff"), by and through the undersigned attorneys, HURWITZ LAW, PLLC, hereby demands a trial by jury, for all issues so triable.

                                      Respectfully Submitted,
                                      HURWITZ LAW PLLC

                                      */s/ Noah S. Hurwitz*
                                      Noah Hurwitz (P74063)
                                      *Attorney for Plaintiff*

Dated: March 24, 2023